## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REBECCA TROSTER, | |
| Plaintiff, | |
| v. | Civil Action No. 20-3584 (BAH) |
| MERRICK GARLAND, *in his official capacity as Attorney General*, | Chief Judge Beryl A. Howell |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Rebecca Troster, a former analyst at the Training Division of the Federal Bureau of Investigation (FBI) in Quantico, Virginia, brings this action against the Attorney General, in his official capacity as head of the FBI, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*, alleging that she experienced discrimination, retaliation, and other adverse acts after she reported suffering a sexual assault by an FBI Supervisory Special Agent at an after-work event. *See generally* Am. Compl., ECF No. 12. Specifically, the plaintiff—who never worked in Washington D.C. during her tenure at the FBI—claims that the FBI "retaliated against her for having complained about the sexual battery, failed to provide her a reasonable accommodation for her disability that resulted from the trauma of the sexual battery, created a hostile working environment, and finally, constructively discharged her from the FBI in March 2020." *Id.* ¶ 5. Defendant has moved to dismiss the amended complaint, under Federal Rule of Civil Procedure 12(b)(3) and 12(b)(6) or, in the alternative, to transfer this case to the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1404 and 1406(a). *See* Def.'s Mot. to Dismiss First Am. Compl. or

Transfer Venue, ECF No. 14.  For the reasons set forth below, defendant's motion is denied in part and granted in part, and this case will be transferred to the Eastern District of Virginia.

## I.      BACKGROUND

Summarized below is the relevant factual and procedural history for this case.

### A.  Factual Background

For almost six years, from September 2014 to March 2020, plaintiff worked as a Management and Program Analyst in the FBI Training Division's National Academy Unit in Quantico, Virginia.  Am. Compl. ¶ 15.  Plaintiff alleges that, on December 15, 2017, she was sexually assaulted by her National Academy Unit colleague, Supervisory Special Agent Charles Dick, at an after-hours farewell party for a coworker.  *Id.* ¶¶ 5, 17.  According to plaintiff, while posing together for a photo, Dick "reach[ed] under her and penetrat[ed] her anal and vaginal areas with his fingers through her jeans" at least twice.  *Id.* ¶ 19.  Plaintiff immediately reported this incident to another Supervisory Special Agent who was present at the farewell gathering, *id.* ¶ 20, and the next day, on December 16, 2017, she also reported the incident to her supervisor, Jeffrey McCormick ("Supervisor McCormick"), a Unit Chief at the FBI National Academy in Quantico, *id.* ¶ 21.

Plaintiff claims that, upon reporting this incident to her supervisor, "the FBI created an environment where [she] was continually harassed, [and] forced to work in a hostile environment, including alongside those who tried to protect Dick and the FBI in their wrongdoings."  *Id.* ¶ 34.  On December 21, 2017, several days after reporting the sexual assault, plaintiff was allegedly told "by FBI management" that "she had to move to another office" and to avoid certain areas of the FBI's Quantico campus, such as a Subway restaurant, where she might encounter Dick.  *Id.* ¶ 23.  Around this time, plaintiff further asserts that Supervisor

McCormick asked whether she wanted to be placed on a "temporary assignment . . . as a way for the FBI to 'manage' the assault she had endured." *Id.* ¶ 24.

About two weeks after the alleged incident, on December 26, 2017, plaintiff avers she was told that the paperwork relating to her anticipated promotion "would need to be resubmitted due to a new process that was being implemented," but that upon asking colleagues about this "new process," nobody knew about its implementation. *Id.* ¶ 25. Although her promotion was ultimately processed by February 2018, plaintiff alleges that "the delay caused her to be ineligible for another position due to lost time as a GS-13," *id.* ¶ 26, and that she was told by Supervisor McCormick that one of his superiors was concerned plaintiff would believe her delayed promotion was "retaliation" for reporting that Dick had sexually assaulted her, *id.* ¶ 25. At this time, plaintiff also sought psychological counseling and in early 2018 was diagnosed with PTSD, which she claims was a "direct result of her sexual assault and subsequent harassment by FBI Management." *Id.* ¶¶ 27-29.

After plaintiff reported him for sexual assault, Dick was referred to the Office of the Inspector General at the Department of Justice ("OIG"). *Id.* ¶ 31. Plaintiff indicates, however, that this OIG investigation was "intentionally delayed" and not opened until January 2019 to allow Dick to retire in September 2018 without facing any "consequences for the sexual assault he committed against" plaintiff. *Id.* ¶¶ 31-32, 36. According to plaintiff, "[i]t is the policy and practice of the FBI and its OIG to allow senior executives accused of sexual assault to quietly retire with full benefits [and] without prosecution." *Id.* ¶ 33.

Throughout 2018 and 2019, plaintiff asserts that she was subject "to increased professional and personal scrutiny from [Training Division] management." *Id.* ¶ 40. Seeking to escape what she describes as an "increasingly hostile work environment," plaintiff alleges she

applied to other positions across the FBI, but that she "was never selected to interview for these positions, despite being qualified." *Id.* ¶ 41.  In March 2020, plaintiff claims that she was "constructively discharged from the FBI by the continuing hostile work environment caused by the failures of OIG and [the FBI's Office of Professional Responsibility] to handle" her reporting of sexual assault "in an unbiased manner." *Id.* ¶ 43.  Plaintiff thereafter accepted a position with the Veteran's Health Care Administration and moved to Colorado, where she currently resides. *Id.* ¶¶ 11, 43.

### B. Procedural Background

Plaintiff made an initial contact with the FBI's Equal Employment Opportunity Office ("EEO") on January 31, 2018 to report sexual harassment by Dick and the retaliation that she alleges ensued.  *Id.* ¶ 10; *see also* Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem."), ECF No. 14, Ex. A. (EEO Counselor Report).  Following that contact, however, plaintiff "opted to pursue mediation" and did not file a formal administrative complaint with the EEO within the specified fifteen-day filing deadline.  Am. Compl. ¶ 10.  On May 14, 2020, plaintiff filed a formal EEO complaint, Def.'s Mem., Ex. 1 (Karen Corado Declaration), ¶ 4, and received the EEO's Report of Investigation based on that complaint on December 1, 2020, *id.* ¶ 6.  Plaintiff thereafter did not request a hearing before an EEO administrative judge or a final agency action.  *Id.*

Plaintiff commenced this lawsuit on December 9, 2020.  *See* Compl., ECF No. 1.  In response, defendant moved to dismiss or, alternatively, transfer venue, s*ee* Def.'s Mot. to Dismiss or Transfer Venue, ECF No. 10, which motion was denied as moot after plaintiff filed the current operative amended complaint on April 26, 2021, *see* Min. Order (April 27, 2021). Reasserting her original allegations of discrimination and retaliation, plaintiff's amended

complaint adds a series of new factual allegations about the structure and operations of the OIG and FBI Office of Professional Responsibility ("OPR").  *See* Am. Compl.  ¶¶ 47-66.

Plaintiff brings four claims against defendant: (1) intentional sex discrimination, in violation of Title VII, *id.* ¶¶ 67-75; (2) disparate impact on the basis of sex, also in violation of Title VII, *id.* ¶¶ 76-79; (3) denial of reasonable accommodations, in violation of the Rehabilitation Act, *id.* ¶¶ 80-84; and (4) retaliation, in violation of both Title VII and the Rehabilitation Act, *id.* ¶¶ 85-87.  On these claims, plaintiff seeks declaratory judgment, $300,000 in damages for emotional distress, pain, and suffering, and compensatory damages, in addition to attorneys' fees and any other relief the Court deems proper.  *Id.* at 22-23.  Defendant's renewed motion to dismiss or transfer to the Eastern District of Virginia is now ripe for resolution.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) authorizes motions for dismissal of an action for improper venue and requires that such motions be included in a responsive pleading, FED. R. CIV. P. 12(b)(3), or otherwise be deemed waived, FED. R. CIV. P. 12(h)(1).  Similarly, the federal venue statute, 28 U.S.C. § 1406(a), requires a court to "dismiss, or if it be in the interest of justice, transfer" a case that has been filed "in the wrong division or district."  28 U.S.C. § 1406(a).  Together, "Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper' . . . in the forum in which [the case] was brought."  *Atlanta Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 55 (2013).  The Supreme Court has explained that "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws."  *Id.*; *accord Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 592 n.3 (2020) (noting *"*that within the federal court system, when venue is laid in the wrong district, or when the plaintiff

chooses an inconvenient forum, transfer rather than dismissal is ordinarily ordered if 'in the interest of justice'") (citing 28 U.S.C. §§ 1404(a), 1406)).

To prevail on a motion to dismiss for improper venue, the defendant must provide "sufficient specificity to put the plaintiff on notice of the defect."  14D WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3826 (4th ed. 2020).  Nevertheless, the burden remains on "plaintiff to establish that the chosen district is a proper venue . . . consistent with the plaintiff's threshold obligation to show that the case belongs in the particular district court in which suit has been instituted."  *Id.*  When presented with any such motion, the Court "will consider to be true any well-pleaded allegations of the complaint that bear on venue," *id.*, but need not accept the plaintiff's legal conclusions as true and may consider materials outside the pleadings, *see Jerome Stevens Pharm., Inc. v. Food & Drug Admin.,* 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## III.    DISCUSSION

Defendant contends that venue "is improper in this District because the alleged unlawful employment practices were committed in the Eastern District of Virginia," where plaintiff "was employed . . . at all relevant times" and where her "employment records were administered." Def.'s Mem. at 7.[1]  Plaintiff does not dispute that she worked in Quantico, Virginia "at all times relevant to her complaint," but nevertheless insists that venue is proper in this District because the "specific unlawful practices committed against her were directed, facilitated, and tolerated by the actions of officials in the District of Columbia."  Pl.'s Resp. in Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), at 14, ECF No. 15; *see id.* at 5 ("The government narrowly focuses on specific actions at Quantico . . . and ignores . . . the claims and allegations involving agency actions, practices, and location of decision making which are centered in the District of Columbia and FBI

---

[1]    Defendant also asserts that plaintiff's amended complaint should be dismissed for failure to state a claim and exhaust administrative remedies, Def.'s Mem. at 15-25, but these arguments are more properly addressed in the transferee district, *see infra* n.3.

Headquarters.").  Defendant has the more persuasive argument here, warranting transfer of this case to the Eastern District of Virginia.

### A. Venue is not Proper in the District of Columbia

Title VII contains a special venue provision that "controls any other venue provision governing actions in federal court."  *Donnell v. Nat'l Guard Bureau*, 568 F. Supp. 93, 94 (D.D.C. 1983).  Codified at 42 U.S.C. § 2000e-5(f)(3), this special venue provision also governs actions under the Rehabilitation Act.  *Slaby v. Holder*, 901 F. Supp. 2d 129, 132 (D.D.C. 2012). The provision allows "for venue only in a judicial district in the State where certain matters related to the employer occurred or were located," *EEOC v. Arabian American Oil. Co*., 499 U.S. 244, 256 (1991), and aligns with the general rule that venue must lie where "a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2); *see also In re Tripati*, 836 F.2d 1406, 1407 (D.C. Cir. 1988).

Specifically, pursuant to 42 U.S.C. § 2000e-5(f)(3), all Title VII and Rehabilitation Act claims must be filed in the judicial district where (1) "the unlawful employment practice is alleged to have been committed," (2) "the employment records relevant to such practice are maintained and administered, or (3) "the aggrieved person would have worked but for the alleged unlawful employment practice."  42 U.S.C. § 2000e-5(f)(3).[2]  This provision reflects Congress's intent "to limit venue to the judicial district concerned with the alleged discrimination."  *Stebbins v. State Farm Mut. Auto. Ins. Co.*, 413 F.2d 1100, 1102 (D.C. Cir. 1969).  Here, plaintiff has not satisfied her burden of establishing that venue is proper in this District.

---

[2]     The statute also contains a catch-all provision, not relevant here, that "*if the respondent is not found within any such district*, such an action may be brought within the judicial district in which the respondent has his principal office."  42 U.S.C. § 2000e-5(f)(3) (emphasis added).

Starting with the first basis for venue set out in 42 U.S.C. § 2000e-5(f)(3), the District of Columbia is not the location "in which the unlawful employment practice is alleged to have been committed," *id.*, because all the key events that plaintiff describes as constituting discrimination and retaliation took place in Quantico, Virginia, where she worked during the entirety of her tenure with the FBI.  To determine where the unlawful employment practice occurred, courts center "on the locus of the alleged discrimination." *Calobrisi v. Booz Allen Hamilton, Inc.*, 58 F. Supp. 3d 109, 112 (D.D.C. 2014).  Venue is improper "in the District of Columbia when a substantial part, if not all, of the employment practices challenged in th[e] action took place outside the District even when actions taken in the District may have had an impact on the plaintiff's situation." *Jones v. Hagel,* 956 F. Supp. 2d 284, 288 (D.D.C. 2013) (citations omitted).

Upon reporting the sexual assault incident to Supervisor McCormick, plaintiff was told to avoid certain areas of the FBI's Quantico campus where she may encounter Dick, and that "she had to move to another office" or be placed on a "temporary assignment" in order for the "FBI to 'manage' the assault she had endured."  Am. Compl. ¶¶ 23-24.  Plaintiff further asserts that her promotion was consequently delayed and that she was "forced to work . . . alongside those who tried to protect" her alleged assailant.  *Id.* ¶¶ 25-26, 34.  Prior to being "constructively discharged" by this "continuing hostile work environment," plaintiff was also subject "to increased professional and personal scrutiny from [Training Division] management." *Id.* ¶¶ 40, 43.  Each of these conversations and actions by plaintiff's supervisors—"a substantial part, if not all, of the employment practices challenged"—occurred in Virginia, not the District of Columbia.  *Jones,* 956 F. Supp. 2d at 288.  Indeed, as plaintiff herself explains, "the real focus of this case" is what happened to her "as a result of the [sexual assault]—the hostile work

environment and ultimate constructive discharge," which she only experienced in Quantico. Pl.'s Opp'n at 12.

Despite denying an attempt to "manufacture[] venue" in this District, *see id.* at 5, plaintiff's argument that the discrimination and retaliation she faced resulted from a "pattern and practice" stemming from FBI headquarters in Washington D.C. is predicated on new assertions added in the amended complaint, *see* Am. Compl. ¶ 4, Pl.'s Opp'n at 15, and does appear to be such an attempt.  Specifically, plaintiff alleges that the "actions and policies" of key personnel in the FBI's OIG and Offices of Equal Employment Opportunity and Professional Responsibility "perpetuate a systemic problem" of "assault and harassment against" women at the FBI by "fail[ing] to investigate sexual assaults against female employees and allowing male agents to retire with benefits."  Pl.'s Opp'n at 15-16; *see also* Am. Compl. ¶¶ 4, 7.  As defendant points out, the new allegations about OIG and OPR "are almost entirely unconnected to [p]laintiff" and involve "reports about the FBI disciplinary process that pre-date the issues in this case by roughly a decade or more," for which they "do not change the conclusion that this district is an improper venue."  Def.'s Mem. at 9.

Even assuming the truth of the new allegations about OIG and OPR and that the conduct described in those new allegations occurred in the District of Columbia, where the FBI headquarters and several of its components are located, Pl.'s Opp'n at 6, the "locus of the alleged unlawful employment practice remains Virginia because all events that directly bear" on plaintiff's claims of discrimination, retaliation, and constructive discharge happened there. *Calobrisi*, 58 F. Supp. 3d at 113; *see also Middlebrooks v. England*, No. 05-cv-0556 (JDB), 2005 WL 3213956, at *3 (D.D.C. Nov. 2, 2005) (holding that "formal authorization" by headquarters did not establish venue and that, instead, it was "the balance of allegedly discriminatory events,

including plaintiff['s] actual termination and every instance of alleged workplace discrimination" that established venue); *Robinson v. Potter*, No. 04-cv-0890 (RMU), 2005 WL 1151429, at *4 (D.D.C. May 2, 2005) (noting that "[i]f the court were to interpret actions . . . of an administrative agency as decisions determined at the agency's headquarters then a plaintiff would always be able [to] establish venue wherever the principal office is located.").  As another Judge on this Court explained when considering almost identical allegations of discriminatory "patterns and practices" directed from FBI headquarters, "[c]laims that merely implicate national policies and involve limited acts by District-based officials but otherwise rest on events occurring entirely elsewhere do not justify maintaining this action here."  *Muldrow v. Garland*, No. 20-cv-2958 (APM), at *2 (D.D.C. Oct. 26, 2021).  Accordingly, per the first prong of 42 U.S.C. § 2000e-5(f)(3), venue is improper in the District of Columbia because the "unlawful employment practice" occurred not here, but in Quantico, Virginia.

    As to the second basis for venue under 42 U.S.C. § 2000e-5(f)(3)—where relevant employment records are maintained and administered—plaintiff contends that her employment "records are also maintained in the District of Columbia."  Pl.'s Opp'n at 16; *see also* Am. Compl. ¶ 7.  Defendant, however, has provided a declaration from the Deputy Assistant Director of the FBI's Training Division, where plaintiff was employed, stating that plaintiff's records "were stored in electronic form on an FBI network, but . . . were nonetheless administered" by the Administrative Services Unit at the Training Division's "physical location in Quantico, Virginia."  Decl. of Janeen Diguiseppi, ECF No. 10-2; Def.'s Reply in Supp. of Mot. to Dismiss Am. Compl. ("Def.'s Reply), at 3, ECF No. 16.  This establishes that plaintiff's employment records were "maintained and administered" in Quantico and further demonstrates that venue is not proper in this jurisdiction.  42 U.S.C. § 2000e-5(f)(3); *see also Walker v. Nishida*, No. 20-cv-

235 (TJK), 2021 WL 638773, at *2 (D.D.C. Feb. 18, 2021) ("[T]hat records are accessible through an electronic database from a district does not mean they are 'maintained and administered' there."); *Kendrick v. Potter*, No. 06-cv-122 (GK), 2007 WL 2071670, at *3 (D.D.C. July 6, 2007) (noting that "[d]eclarations of human resources officers and employers are sufficient to establish where the employment records are maintained and administered").

Finally, as to the third basis for venue authorized in 42 U.S.C. § 2000e-5(f)(3)—where plaintiff would have worked but for the alleged unlawful employment practice—plaintiff concedes that "but for the alleged unlawful employment practice" she would have worked in the Eastern District of Virginia, where Quantico is located, and not in this District.  Pl.'s Opp'n at 14; Def.'s Reply at 4.  Thus, taken together, "the special requirements of Title VII compel the conclusion that venue is not proper in this district" and instead properly lies in the Eastern District of Virginia.  *McLaughlin v. Holder*, 864 F. Supp. 2d 134, 140 (D.D.C. 2012).

## B.  Transfer to the Eastern District of Virginia, Rather Than Dismissal, is Appropriate

Upon finding improper venue, courts may dismiss a case or, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  The decision whether to dismiss or transfer "in the interest of justice" is committed to the discretion of the district court.  *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 789 (D.C. Cir. 1983).  Transfer, rather than dismissal, of plaintiff's case is in the interest of justice for at least two reasons.[3]

---

[3] Defendant argues that, "[i]n addition to improper venue, the Amended Complaint should be dismissed because the claims and allegations therein have not been administratively exhausted and because the allegations fail to state legally plausible claims."  Def.'s Mem. at 15; *see also* Def.'s Reply at 7.  The Court declines to reach the merits of the parties' factual dispute as to exhaustion and defendant's arguments on the failure to state a claim, under Fed. R. Civ. P. 12(b)(6), since "it has already determined that it is an improper venue for adjudicating" this case. *Roman-Salgado v. Holder*, 730 F. Supp. 2d 126, 131 (D.D.C. 2010).

First, the "standard remedy for improper venue is to transfer the case to the proper court rather than dismissing it—thus preserving a [plaintiff's] ability to obtain review." *Nat'l Wildlife Fed'n v. Browner*, 237 F.3d 670, 674 (D.C. Cir. 2001); *see also Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207, 218 (D.D.C. 2014) ("[T]he interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal.").  Second, defendant does not argue that transfer "would prejudice [its] position on the merits."  *McQueen v. Harvey*, 567 F. Supp. 2d 184, 188 (D.D.C. 2008).  Defendant has not yet filed an answer in response to plaintiff's amended complaint, and the instant motion, along with its associated briefing, are the only substantive submissions made by defendant in this case.  Indeed, defendant accepts that, if not dismissed and in the interest of justice, this case should be transferred to the Eastern District of Virginia.  *See, e.g.,* Def.'s Reply at 4.

Accordingly, transfer of this case to the Eastern District of Virginia, where a substantial part—if not all—of the events underpinning plaintiff's claims under Title VII and the Rehabilitation Act took place, is in the "interest of justice."  28 U.S.C. § 1406(a).

## IV.   CONCLUSION

For the reasons stated above, defendant's motion to dismiss is denied without prejudice so defendant may refile it, if appropriate, after transfer is made, and this case is transferred to the United States District Court for the Eastern District of Virginia, which is the proper venue to consider plaintiff's claims.  An Order consistent with this Memorandum Opinion will be issued contemporaneously.

Date: December 10, 2021

BERYL A. HOWELL
Chief Judge